# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

MATSON NAVIGATION COMPANY, INC.,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION;
MARITIME ADMINISTRATION,

Respondents.

Case No. 21-1137

## PETITION FOR REVIEW

Pursuant to 28 U.S.C. § 2342(3)(A) and Federal Rule of Appellate Procedure 15(a), Matson Navigation Company, Inc. ("Matson") hereby petitions this Court for review of the final order of the Department of Transportation and Maritime Administration, issued April 26, 2021 approving the vessel known as the CMA CGM HERODOTE for inclusion in the Maritime Security Program. Matson attaches the order as Exhibit A to this petition.

Matson believes that jurisdiction and venue is proper in the U.S. District Court for the District of Columbia, and has filed a complaint challenging the Order in that jurisdiction. *See Matson Navigation Co. v. Dep't of Transp.*, No. 21-CV-1606 (D.D.C.). It is filing this petition as a protective matter and to preserve its rights in the event the district court determines that jurisdiction lies exclusively in this Court.

The Order is arbitrary, capricious, an abuse of discretion within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and is otherwise contrary to law or unsupported by substantial evidence in the administrative record.

Dated:  June 14, 2021	Respectfully submitted,

/s/ Mark A. Perry
Mark A. Perry
Joshua M. Wesneski
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
mperry@gibsondunn.com

Rachel S. Brass
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105
(415) 393-8200

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

MATSON NAVIGATION COMPANY, INC.,

Petitioner,

v.

DEPARTMENT OF TRANSPORTATION; MARITIME ADMINISTRATION,

Respondents.

Case No. 21-1137

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and this Court's Rule 26.1, petitioner Matson Navigation Company, Inc. states as follows:

Matson Navigation Company, Inc. is a subsidiary of Matson, Inc., a public company.

Dated: June 14, 2021

Respectfully submitted,

/s/ Mark A. Perry

Mark A. Perry
Joshua M. Wesneski
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mperry@gibsondunn.com

Rachel S. Brass
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8200

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2021, I caused a true and correct copy of the Petition for Review, Exhibit A thereto, and Corporate Disclosure Statement to be served on the following:

Department of Transportation
1200 New Jersey Avenue, SE
Washington, D.C.  20590
(*via hand delivery*)

Maritime Administration
1200 New Jersey Avenue, SE
Washington, D.C.  20590
*(via hand delivery)*

APL Maritime, Ltd.
6110 Executive Boulevard
Suite 410
Rockville, MD  20852
*(via UPS)*

APL Marine Services Ltd.
16220 N Scottsdale Rd
Scottsdale, AZ  85254
*(via UPS)*

/s/ Mark A. Perry
Mark A. Perry
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

# Exhibit A



U.S. Department
of Transportation
**Maritime
Administration**

1200 New Jersey Avenue, SE
Washington, DC 20590

Eric Mensing
President & CEO
APL Maritime, Ltd.
1667 K Street, NW
Suite 700
Washington, D.C. 20006

April 26, 2021

Dear Mr. Mensing:

On April 26, 2021, the Acting Maritime Administrator ("Administrator") took the following actions regarding the application of APL Maritime, Ltd. ("APLM") dated April 5, 2021, to: (1) approve replacement of the geared containership APL GUAM (IMO No. 9229609) under Amended and Restated Maritime Security Program ("MSP") Operating Agreement No. MA/MSP-54 ("Operating Agreement") by the geared CMA CGM HERODOTE (IMO No. 9360142) ("HERODOTE") in the Maritime Security Fleet ("Fleet"); (2) approve amendment of the Operating Agreement to replace the APL GUAM with the HERODOTE; and (3) grant approval before documentation under United States law to transfer the HERODOTE back to foreign registry pursuant to 46 U.S.C. § 56101(b) to promote financing of the HERODOTE:

(A)   Found that: the HERODOTE will be owned by the [       .       ] which will be a Delaware Statutory Trust under Title 12, Chapter 38 of the Delaware Code and United States Citizen Trust qualified under 46 U.S.C. §§ 12111 and 53101(11) through [         .         ] a Delaware corporation and United States citizen corporation within the meaning of 46 U.S.C. § 50501 ("§ 50501 Citizen") acting not in its official capacity but solely as Owner Trustee, for the benefit of [         .         ], and that [   .   ] in its capacity as Owner Trustee, will demise charter the HERODOTE to APLM. Thus, a United States Citizen Trust will own the HERODOTE, and demise charter it to a Documentation Citizen. Therefore, the HERODOTE meets the citizenship requirements for owners, charterers and, operators of Fleet vessels under 46 U.S.C. § 53102(c)(2).

(B)   In view of (A) above, determined that the HERODOTE meets the Fleet vessel control eligibility requirements of 46 U.S.C. § 53102(b)(1).

(C)   Noted that: APLM will operate the HERODOTE in established trade in the Western Pacific pursuant to a registry endorsement, including the Commonwealth of the Northern Mariana Islands ("CNMI"), but will not carry United States Government cargo between any State or Territory of the United States and CNMI, except as

2

> permitted by U.S. Customs and Border Protection; and Sec. 502(b) of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (48 U.S.C. § 1801 note) ("CNMI Covenant") applies coastwise endorsement requirements to shipments to CNMI involving the United States Government.

(D)  In view of (C) above, determined that the HERODOTE will provide transportation in foreign commerce, meeting the Fleet vessel operational requirements of 46 U.S.C. § 53102(b)(2).

(E)  Found that the HERODOTE is a diesel-powered, self-propelled vessel, completed in 2007. Thus, the HERODOTE will be 15 years of age or less at the time of its inclusion in the Maritime Security Fleet, and therefore determined that the HERODOTE meets the Fleet vessel age and propulsion requirements of 46 U.S.C. § 53102(b)(3).

(F)  Noted that: (1) the Director, Strategic Plans, Policy, and Logistics, United States Transportation Command ("USTRANSCOM J5J4"), by letter dated March 12, 2021, advised the Maritime Administration ("MARAD") that it found the HERODOTE to be militarily useful and suitable as a replacement for the APL GUAM; (2) found the approval given by USTRANSCOM J5J4 constitutes approval or agreement by the Commander, USTRANSCOM ("Commander") regarding the HERODOTE's military suitability; (3) found that APLM will employ the HERODOTE in established and ongoing foreign commerce, as noted above in (C); and (4) determined that the HERODOTE is commercially viable.

(G)  In view of the notations, findings, and determinations in (F) above, determined that the HERODOTE meets the Fleet vessel capabilities requirements of 46 U.S.C. § 53102(b)(4).

(H)  Found that: (1) by letter dated March 18, 2021, the Associate Administrator for Strategic Sealift ("Associate Administrator") determined that the HERODOTE was eligible to receive an expedited United States vessel registry process pursuant to 46 U.S.C. § 53102(e)(1); (2) APLM intends to work with the United States Coast Guard ("USCG") to document the HERODOTE under United States law pursuant to 46 U.S.C. ch. 121 in May 2021; and thus (3) determined that the HERODOTE meets the Fleet vessel documentation requirements of 46 U.S.C. § 53102(b)(5).

(I)  In view of the notations, findings, and determinations in (A) through (H), above, found that the HERODOTE meets all the statutory Fleet vessel eligibility requirements of 46 U.S.C. § 53102(b), and determined that the HERODOTE meets the statutory Fleet replacement vessel eligibility requirements of 46 U.S.C. § 53105(f).

(J)  Noted that 46 C.F.R. § 296.30(c) permits the replacement of a vessel under an MSP Operating Agreement with another vessel that is eligible to be included in an MSP

       Operating Agreement under 46 C.F.R. § 296.11(a) if the Secretary of Transportation ("Secretary"), in conjunction with the Secretary of Defense ("SecDef"), approves the replacement vessel.

(K)    Noted that: (1) 46 C.F.R. § 296.11(a) implements 46 U.S.C. § 53102(b); (2) the HERODOTE meets the Fleet vessel eligibility requirements and qualifications of 46 U.S.C. § 53102(b), as determined and stated above; and (3) determined that the HERODOTE satisfies the MSP Operating Agreement replacement vessel requirements of 46 C.F.R. § 296.11(a), and that the Secretary and SecDef granted their approval of the HERODOTE as a replacement Fleet vessel, as determined and stated above.

(L)    In view of (J) & (K), above, determined that approval of these actions constitutes joint approval of the HERODOTE for purposes of Article I-4 of each Operating Agreement and MSP regulations at 46 C.F.R. § 296.30(c).

(M)    In view of both (L), above, and the foregoing findings and determinations regarding the HERODOTE, determined that APLM and the HERODOTE satisfy the requirements of Article I-4 of the Operating Agreement and the MSP regulations at 46 C.F.R. § 296.30(c) regarding the eligibility of MSP Operating Agreement replacement vessels.

(N)    Noted that: (1) pursuant to the requirements of Article I-22 of each Operating Agreement, APLM has provided to MARAD copies of the United States Citizen Trust Agreement, Demise Charter, [redacted] . and [redacted] . that will govern the operation of the HERODOTE; (2) found that MARAD's Office of Chief Counsel has reviewed the United States Citizen Trust Agreement, Demise Charter, [redacted] . and [redacted] . that APLM submitted and found them to be satisfactory in form and substance; and (3) approved them pursuant to Article I-22 of the Operating Agreement, with the condition that APLM must submit the final United States Citizen Trust Agreement, Demise Charter, [redacted] . and [redacted] . without redactions and that the final submitted documents must be materially the same as the approved pro forma documents.

(O)    Noted that: (1) Article I-2(a) of each Operating Agreement requires that the Operating Agreement holder warrant to MARAD that it is either the owner of the vessel operating, or proposed to be operated, under the Operating Agreement, or that it charters the vessel at financial risk through a demise charter that transfers virtually all the rights and obligations of vessel ownership to the Operating Agreement holder; and (2) found that APLM will be operating the HERODOTE at financial risk under the terms of the Demise Charter.

(P)    In view of (O), above, found that APLM will operate the HERODOTE in accordance with Article I-2(a) of the Operating Agreement.

(Q) Found that APLM must enroll the HERODOTE in a Department of Defense-approved Emergency Preparedness Program pursuant to the requirements of 46 U.S.C. § 53107, Article I-9 of the Operating Agreement, and the regulations at 46 C.F.R. § 296.31(c), and determined that enrollment of the HERODOTE in the Voluntary Intermodal Sealift Agreement ("VISA") program will satisfy this requirement.

(R) Noted that: (1) by letter dated March 18, 2021, the Associate Administrator determined that the HERODOTE was qualified as a Fleet-eligible vessel under 46 U.S.C. § 53102(b), and that the HERODOTE was eligible for MSP expedited registry procedures and Certificate of Inspection issued by the USCG under 46 U.S.C. § 53102(e)(1) and § 1137(a) of the Coast Guard Authorization Act of 1996 (Pub. L. 104-324); and (2) APLM has stated that it is currently working with USCG to register the HERODOTE under United States law, and anticipates completing the registry process for the HERODOTE in May 2021.

(S) In view of the notations, findings and determinations above: (1) approved replacement of the APL GUAM with the HERODOTE under the Operating Agreement; and (2) approved amendment to the Operating Agreement to replace the APL GUAM with the HERODOTE.

(T) Determined that APLM is granted approval to transfer the ownership of the HERODOTE to noncitizens and to transfer the HERODOTE back to foreign registry, after documentation under United States law, in order to promote financing of the vessels pursuant to 46 U.S.C. § 56101(b), subject to the conditions that: (1) the HERODOTE is transferred to a U.S.-approved foreign registry, but in no case to any registry listed by the U.S. Department of Commerce in 15 C.F.R. § 740, Supplement 1, Country Group E ("Foreign Exclusion List"); (2) pursuant to 46 C.F.R. § 221.13(a)(4), neither APLM nor any successors in interest to any of the HERODOTE charter the HERODOTE for the carriage of cargoes of any kind to or from, or commercially operates the HERODOTE within the waters of (as distinct from passage through), any country on the Foreign Exclusion List; and (3) APLM shall notify MARAD of the HERODOTE's transfer at least 30 days prior to its occurrence

(U) Noted that, notwithstanding the findings in (T), above, and prior to the transfer of a vessel, owners are responsible when reflagging or transferring ownership of a U.S.-documented vessel over 1,000 gross tons for compliance with all applicable laws and regulations, including but not limited to, the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2601 et seq., the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq., and the Clean Water Act (CWA), 33 U.S.C. § 1251 et seq.  Pursuant to MARAD policy (76 Fed. Reg. 37,280 (June 27, 2011)), the approval to transfer a vessel to U.S. registry and back to foreign registry requires: (1) the vessel owner to self-certify to MARAD that the vessel does not contain polychlorinated biphenyls (PCBs) in regulated quantities; (2) a PCB self-certification statement issued to MARAD by a person with legal authority to act on behalf of the company containing the following language: "Under civil and

criminal penalties of law for making or submission of false or fraudulent statements or representations (18 U.S.C. § 1001 and 15 U.S.C. § 2615), to the best of my knowledge and belief, I hereby certify that after the exercise of reasonable due diligence, the vessel does not contain polychlorinated biphenyls (PCBs) in amounts greater than or equal to 50 ppm as regulated by Toxic Substances Control Act (15 U.S.C. § 2601, et seq.)"; and (3) the vessel owner is required to provide MARAD with the PCB self-certification statement described in (2) above prior to transfer of the vessel to U.S. registry and back to foreign registry. MARAD will provide the Environmental Protection Agency (EPA) with up to 30 days' notice prior to approving any transfer request.

(V)  Found that, on April 5, 2021, APLM met the PCB self-certification condition in (U), above, for the HERODOTE by submitting the required PCB self-certification statement to MARAD before registering the HERODOTE under United States law and transferring the HERODOTE out of United States registry. However, APLM must provide an updated PCB self-certification statement for the HERODOTE to MARAD prior to the HERODOTE's transfer back to foreign registry.

(W)  Authorized the Office of the Chief Counsel to prepare appropriate documentation to effectuate the foregoing.

I request that you indicate your acceptance of the actions above by signing and returning the enclosed copy of this letter, noting the date of the signing thereon.

Sincerely,

T. Mitchell Hudson, Jr.
Secretary, Maritime Administration

cc:  U.S. Transportation Command (USTRANSCOM)
     U.S. Coast Guard, Office of Commercial Vessel Compliance (CG-CVC)

Accepted:

_____
APL Maritime, Ltd.

6

_____
Date